**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **FINLEY ALENXANDER WEALTH MANAGEMENT, LLC,** *et al.*, | * | |
| | * | |
| **Plaintiffs,** | | |
| v. | * | **Case No.: GJH-19-1312** |
| | | |
| **M&O MARKETING, INC.,** *et al.*, | * | |
| | | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiffs Finley Alexander Wealth Management, LLC ("Finley Alexander") and Kyle Winkfield brought this civil action against Defendant M&O Marketing, Inc. ("M&O") and individual Defendants Dennis Brown, Edward Petersmarck, and Ryan Brown. ECF No. 1. Plaintiffs allege claims of fraud and fraudulent concealment based on Defendants' methods of inducing Plaintiffs to enter into a business relationship with M&O and claims of tortious interference with contracts, tortious interference with prospective business advantage, defamation *per se*, defamation, invasion of privacy false light, and slander based on Defendants' attempts to damage Plaintiffs' business after the end of their business relationship. ECF No. 1. Pending before the Court are Defendants' Motion to Dismiss, ECF No. 15, Plaintiffs' Motion to Strike Affidavit of Ryan Brown or, in the Alternative, to File Surreply, ECF No. 28, and Plaintiffs' Emergency Motion for Injunctive Relief, ECF No. 31.[1] No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendants' Motion to Dismiss is

---

[1] Also pending are Plaintiffs' Motion to Seal Portion of Plaintiffs' Opposition to Motion to Dismiss, ECF No. 23, and Defendants' Motion to Seal Reply Brief, ECF No. 26. Both Motions are unopposed and only seek to seal small portions of the record, so they are granted.

granted, Plaintiffs' Motion to Strike Affidavit of Ryan Brown, or in the Alternative, Motion to File Surreply is granted, in part, and denied, in part, and Plaintiffs' Emergency Motion for Injunctive Relief is denied as moot.

## I.     BACKGROUND[2]

Plaintiff Finley Alexander is a Maryland-based financial advisory firm run by Plaintiff Winkfield, a Maryland-based financial advisor. ECF No. 1 ¶¶ 14, 15, 20. Plaintiffs sell investment and insurance products to Maryland-based clients. *Id.* ¶ 1. Plaintiff Winkfield previously worked for O'Dell, Winkfield, Roseman & Shipp, LLC ("OWRS"), a predecessor to Finley Alexander that is also based in Maryland. *Id.* ¶¶ 14, 50.

Defendant M&O sells compliance and marketing services designed to help smaller advisory firms, like Finley Alexander, grow and navigate the highly regulated securities and insurance markets. ECF No. 1 ¶ 2. It is a conglomeration of at least eight entities run out of an office in Southfield, Michigan, and it is responsible for one billion dollars in annual premiums. ECF No. 1 ¶¶ 17, 24, 30; ECF No. 1-1 at 2.[3] M&O advertises itself as "a billion-dollar insurance marketing organization," owned and operated by a "genius" and "savant." ECF No. 1 ¶¶ 4, 16, 17; ECF No. 1-2 at 3.

Defendant Dennis Brown became the sole owner and CEO of M&O in 2018 when he bought out his former partner. ECF No. 1 ¶¶ 16, 29; ECF No. 1-2 at 3. Defendant Petersmarck is the Executive Director of Practice Development at M&O and Defendant Ryan Brown is counsel at M&O. ECF No. 1 ¶¶ 18, 19; ECF No. 1-2 at 11–12.

---

[2] Unless otherwise stated, the background facts are taken from Plaintiff's Complaint, ECF No. 1, and are presumed to be true.
[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

## A. Business Relationship

At some point during Plaintiff Winkfield's tenure at OWRS, that firm contracted for services from Defendant M&O related to securities and insurance marketing. ECF No. 1 ¶¶ 49, 50, 52. In or around 2017, after Plaintiff Winkfield created Finley Alexander, Plaintiffs engaged Defendant M&O to provide marketing and regulatory compliance services to help Plaintiffs create a legitimate and reputable public presence in order to boost sales of its financial and insurance products. *Id.* ¶¶ 28, 51; ECF No. 22-1 ¶ 5. Defendant Petersmarck was Plaintiffs' main contact at M&O. ECF No. 1 ¶¶ 5, 56.

At some point during their business relationship, Plaintiffs learned troubling information about Defendants. First, Plaintiffs learned that in 2016, M&O and one of its employees were defendants in a disability discrimination and retaliation case. ECF No. 1 ¶ 42; *see Ankofski v. M&O Mktg., Inc.*, No. 4:16-cv-10284 (E.D. Mich.). In that case, on November 4, 2016, the Eastern District of Michigan denied M&O's request to compel the parties to arbitrate their dispute but granted M&O's request to dismiss any claims against its employee in his individual capacity. ECF No. 1-7; *see Ankofski*, No. 4:16-cv-10284, ECF No. 31. On November 30, 2016, the Eastern District of Michigan dismissed the case because the parties settled the matter. *See Ankofski*, No. 4:16-cv-10284, ECF No. 33.

Plaintiffs also discovered that in 2017, a financial advisor for CoreCap Advisors and CoreCap Investments, Inc. (collectively, "CoreCap"), companies that operate out of the same office location as M&O, was arrested and charged with embezzlement for stealing nearly half a million dollars from CoreCap clients. ECF No. 1 ¶¶ 37, 38; ECF No. 1-5. A news story published in September 2017 stated that CoreCap offered a settlement of only $10,000 to one victim who had lost $46,000 in the scheme, ECF No. 1-6, and Plaintiffs allege that CoreCap

refused to make any of its clients "whole," ECF No. 1 ¶ 41. M&O's Chief Compliance Officer, Judith Villareal,[4] is the Corporate Secretary, Director, Resident Agent for CoreCap, *id.* ¶ 35; ECF No. 1-3 at 17, 19, and Defendant Dennis Brown is identified as a Director of CoreCap, ECF No. 1 ¶ 36; ECF No. 1-3 at 17, 19.

Plaintiffs also learned that Defendant Petersmarck was not licensed to sell insurance or provide insurance advice or counseling in Maryland, where Plaintiffs are located, or in Michigan, where Defendant M&O is located. ECF No. 1 ¶¶ 50, 51, 56. Plaintiffs also learned that Defendant Petersmarck had a previous felony conviction. *Id.* ¶¶ 18, 56, 60.

As a result of learning this information, Plaintiffs severed their relationship with M&O. ECF No. 1 ¶ 57.

**B. Events After Termination of Business Relationship**

After Plaintiffs terminated their business relationship with M&O, Defendant Petersmarck sent Plaintiff Winkfield numerous text messages referring to Plaintiff Winkfield as a "bitch." ECF No. 1 ¶ 57. Plaintiffs also allege that on March 9, 2019, Defendant Petersmarck anonymously posted a false statement on a website called Ripoff Report (the "Ripoff Post"). *Id.* ¶ 61; ECF No. 1-9. Specifically, the Ripoff Post stated that Plaintiffs "attempted to defraud" clients, promised a "bonus" to a client where "there was no real 'bonus,'" falsely promised that the client would be 'made whole … That was simply not true," and that "Kyle Winkfield can change the name of his company but he can't change the way he does business – BEWARE!" ECF No. 1 ¶ 62; ECF No. 1-9 at 4. Plaintiffs allege that although the Ripoff Post was submitted anonymously, it "contain[ed] clear indications that it was written, edited or finalized by Defendant Petersmarck." ECF No. 1 ¶ 61.

---

[4] Ms. Villareal is not a defendant in this case.

4

On January 22, 2019, Defendant Ryan Brown sent a "Cease & Desist" letter from his office in Michigan to Joseph E. Roseman, one of Plaintiff Winkfield's former partners at OWRS, in North Carolina asking him to "cease and desist using all M&O material that has been provided and shared with you during your business relationship with M&O" (the "January Cease & Desist Letter"). ECF No. 15-2. On March 25, 2019, Defendant Ryan Brown sent a "Cease & Desist" letter to Jeremy D. Shipp, another former partner at OWRS, in Virginia stating that Mr. Shipp, Mr. Roseman, and Plaintiff Winkfield, "under the Registered Investment Advisor, Retirement Capital Planners, LLC, … have continued to utilize copyrighted materials that are the intellectual property of M&O Marketing, Inc." (the "March Cease & Desist Letter"). ECF No. 1-10. The letter stated further that "[s]ince Mr. Roseman ha[d] disregarded a formal Cease & Desist that was sent to him on January 22, 2019, ordering him to cease and desist use of such materials, [M&O] now feel it is necessary to provide [Mr. Shipp], President and Chief Compliance Officer of Retirement Capital Planners, with formal notice of [his] duty to prevent [his] [Investment Advisor Representatives ("IARs")] from, first, disregarding [M&O's] Cease & Desist and, second, allowing [his] IARs to knowingly and voluntarily continue to use M&O's intellectual property in violation of both The Copyright Act of 1976 and Title 17 of the United States Code." *Id.* Finally, the letter stated that M&O reserved the right to contact state and federal regulators to resolve the issues discussed in the letter. *Id.* Plaintiffs themselves never received a similar letter. ECF No. 1 ¶¶ 66, 67.

### C. Present Litigation

On May 3, 2019, Plaintiff filed a Complaint against Defendants in this Court alleging fraud (Count I), fraudulent concealment (Count II), tortious interference with contracts (Count III), tortious interference with prospective business advantage (Count IV), defamation *per se*

(Count V), defamation (Count VI), invasion of privacy false light (Count VII), and slander (Count VIII). The fraud-based claims in Counts I and II generally allege that Defendants fraudulently induced Plaintiffs to enter into a business relationship by misrepresenting, concealing, or failing to disclose material facts about their abilities to provide marketing and compliance advice to Plaintiffs. The defamation-based claims in Counts III through VIII generally allege that after Plaintiffs terminated the business relationship, Defendants attempted to use the Ripoff Post and the January and March Cease & Desist Letters to destroy Plaintiffs' business.

On July 2, 2019, Defendants filed a Motion to Dismiss for lack of personal jurisdiction and failure to state a claim. ECF No. 15. In support of its jurisdictional argument, Defendants provided an affidavit from Defendant Ryan Brown. ECF No. 15-3. Plaintiff filed an opposition to the Motion to Dismiss on July 26, 2019, ECF No. 22, and Defendants filed a reply, with a new version of Defendant Ryan Brown's affidavit, on August 16, 2019, ECF No. 27. On August 21, 2019, Plaintiffs filed a Motion to Strike Affidavit of Ryan Brown or, in the Alternative, to File Surreply ("Motion to Strike"). ECF No. 28. Defendants filed an opposition on September 4, 2019, ECF No. 29, and Plaintiffs filed a reply on September 18, 2019, ECF No. 30. Finally, on October 7, 2019, Plaintiffs filed an Emergency Motion for Injunctive Relief. ECF No. 31. Defendants filed an opposition on October 21, 2019, ECF No. 34, and Plaintiffs filed a reply on November 4, 2019, ECF No. 35.

## II.    MOTION TO STRIKE

In support of their Motion to Dismiss, and specifically their contention that the Court lacks personal jurisdiction, Defendants have provided an affidavit from Defendant Ryan Brown. ECF No. 25-1. Plaintiff moves the Court to strike this affidavit on the grounds that it does not

comport with 28 U.S.C. § 1746, it contains statements that are not based on Ryan Brown's personal knowledge as is required by Federal Rule of Civil Procedure 56, and it contains conclusory statements instead of facts. None of Plaintiffs' arguments are persuasive.

First, Ryan Brown's affidavit complies with 28 U.S.C. § 1746. Section 1746, which governs unsworn declarations under penalty of perjury, provides, in part, that an individual may submit an unsworn declaration if it "is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form … 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature).'" Here, Ryan Brown signed and dated his declaration with the following statement: "Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge." ECF No. 25-1 at 5. Because a declaration need only include language that is "substantially" similar to the example provided in the statute and courts in this District have found that language nearly identical to the language in Ryan Brown's affidavit complies with § 1746, the Court concludes that Ryan Brown's affidavit complies with the requirements of § 1746. *See, e.g.*, *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 335 (D. Md. 2011) (finding that an affidavit "substantially complied with the requirements of 28 U.S.C. § 1746" where it was signed "under the penalties of perjury" and the affiant stated that it was "true and accurate to the best of [her] knowledge and belief").

Next, even if Ryan Brown's affidavit is not based on personal knowledge, that affidavit does not, as Plaintiffs suggest, run afoul of the Federal Rules of Civil Procedure. Plaintiffs are correct that Rule 56, which governs summary judgment, requires "[a]n affidavit or declaration used to support or oppose a motion [to] be made on personal knowledge…" Fed. R. Civ. P.

56(c)(4). Courts in this District have previously looked to this rule to assess the sufficiency of affidavits appended to motions to dismiss because there was no similar rule for 12(b) motions. *See Goode v. STS Loan & Mgmt., Inc.*, No. Civ. A. DKC 2004–0999, 2005 WL 106492, at *2 (D. Md. Jan. 14, 2005). In 2014, however, the District of Maryland adopted Local Rule 601.3, which provides:

> For purposes of these Rules, "affidavit" means either (1) a sworn statement the contents of which are affirmed under the penalties of perjury to be true or (2) an unsworn declaration as provided under 28 U.S.C. § 1746. Unless the applicable rule expressly requires the affidavit to be made on personal knowledge, the statement may be made to the best of the affiant's knowledge, information and belief.

Loc. R. 601.3 (D. Md. 2014). No applicable rule expressly requires that an affidavit in support of a motion to dismiss for lack of personal jurisdiction be based upon personal knowledge. Thus, because Ryan Brown made the statements in the affidavit "to the best of [his] knowledge," the Court declines to strike the affidavit on the basis that it may not be based entirely on Ryan Brown's personal knowledge. *See id.*

Finally, the Court rejects Plaintiffs' argument that it must strike Ryan Brown's affidavit because it contains conclusory statements. In support of their argument, Plaintiffs cite to statements in the affidavit that Defendants did not "specifically direct contacts or business to Maryland," "regularly transact business in Maryland," "engage in any persistent course of conduct in Maryland," or "derive any substantial revenue from Maryland," and state that "the Affidavit is devoid of any facts in support of these conclusory statements." ECF No. 28 at 7. At this stage, however, it is Plaintiffs' burden to establish that the Court has personal jurisdiction over Defendants; it is not Defendants' burden to establish that there are no facts from which the

Court could determine it has personal jurisdiction over Defendants.[5] *See Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016); *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). Ryan Brown's affidavit states facts that, according to Defendants, deprive this Court of personal jurisdiction over Defendants. This is not a basis to strike the affidavit; rather, it remains Plaintiffs' burden to provide facts that, if true, would show that the Court *does* have personal jurisdiction over Defendants. Accordingly, Plaintiffs' Motion to Strike is denied.[6]

## III. MOTION TO DISMISS

### A. Personal Jurisdiction

Defendants move to dismiss the Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). A challenge to personal jurisdiction is to be resolved by "the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989) (citation omitted). A plaintiff must meet this burden as to each defendant, *see Rush v. Savchuk*, 444 U.S. 320, 332 (1980), and as to each defendant, the plaintiff must meet this burden as to each claim, *see Crussiah v. Inova Health Sys.*, No. TDC–14–4017, 2015 WL 7294368, at *4 (D. Md. Nov. 19, 2015). Discovery and an evidentiary hearing are not required to resolve a Rule 12(b)(2) motion, however. *See generally* 5B Wright & Miller, Federal Practice & Procedure § 1351, at 274–313 (3d ed. 2004, 2012 Supp.). Rather, the Court may, in its discretion, address personal jurisdiction as a preliminary matter, ruling solely on the motion papers, supporting legal memoranda, affidavits, and the allegations in the complaint. *Consulting Engineers Corp. v.*

---

[5] Indeed, such a burden would likely be impossible to carry as it would require a defendant to essentially prove a negative, *i.e.*, that it does not have the required minimum contacts with the forum state.

[6] In the alternative, Plaintiffs request leave to file the surreply that they have attached to the Motion to Strike. ECF No. 28 at 7; *see* ECF No. 28-3. Defendants have no objections, *see* ECF No. 29 at 8, so the Court will grant this request.

*Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009); *see also In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). In such a circumstance, the plaintiff need only make "a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Consulting Engineers Corp.*, 561 F.3d at 276. "In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs. Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs. Inc.*, 2 F.3d at 62).

Personal jurisdiction over a nonresident defendant is proper when "(1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993); *see also* Fed. R. Civ. P. 4(k)(1)(A). "In applying Maryland's long-arm statute, federal courts often state that '[the] statutory inquiry merges with [the] constitutional inquiry,'" *Dring v. Sullivan*, 423 F. Supp. 2d 540, 544 (D. Md. 2006) (collecting cases), but it is not permissible to completely dispense with analysis under the long-arm statute altogether, *see Mackey v. Compass Mktg. Inc.*, 391 Md. 117, 141 n.6 (2006). Thus, the Court will assess whether exercise of personal jurisdiction over Defendants is consistent with constitutional due process and, if so, whether Maryland's long-arm statute confers such jurisdiction.

### i.     Constitutional Due Process

A court's exercise of personal jurisdiction over a defendant is consistent with due process so long as the defendant has established "minimum contacts" with the forum state such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). Put differently, the court must consider whether a defendant's contacts with the forum state are substantial enough

that it "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "Personal jurisdiction exists where general jurisdiction or specific jurisdiction is established." *Barnett v. Surefire Medical, Inc.*, No. JFM–17–1332, 2017 WL 4279497, at *2 (D. Md. Sept. 25, 2017). Plaintiffs claim that both types of jurisdiction exist over all Defendants in this case.

### a. General Jurisdiction

The Court will first determine whether Plaintiffs have established general personal jurisdiction over Defendants. "To establish general jurisdiction, the defendant's activities in the state must have been 'continuous and systematic.'" *Carefirst of Md.*, 334 F.3d at 397. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Barnett*, 2017 WL 4279497, at *2 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)) (internal quotation marks omitted). "In the context of a corporation, the paradigm bases for general jurisdiction are 'the place of incorporation and principal place of business.'" *Id.* (quoting *Daimler AG v. Bauman*, 134 S.Ct. 746, 759 (2014)). "[W]hile those paradigms are not necessarily the only bases for general jurisdiction, it would be 'unacceptably grasping' to approve the exercise of general jurisdiction wherever a corporation, 'engages in a substantial, continuous, and systemic course of business.'" *Id.* (quoting *Daimler AG*, 134 S.Ct. at 761 (declining to find general jurisdiction lies in every state in which a corporate defendant has "sizeable" sales)).

Here, there is no general personal jurisdiction over any of the Defendants. As to the individual Defendants, there is no allegation or evidence that any are domiciled in Maryland and any business they are alleged to have conducted in Maryland is not sufficient to subject them to

general jurisdiction in Maryland as individuals. *See Barnett*, 2017 WL 4279497, at *3 ("As an individual, [the defendant] would not be subject to general jurisdiction in Maryland by virtue of his business ties."). As for M&O, the only relevant evidence in the record suggests that it is incorporated in Michigan, ECF No. 25-1 ¶ 4, and its principal place of business is in Michigan, *id.* ¶ 5; ECF No. 1 ¶ 20. Although Plaintiffs have provided evidence that M&O does conduct business in Maryland, there is no evidence that its Maryland business is larger than its business in any other state such that Maryland could be considered its principal place of business.[7] Therefore, Plaintiffs have failed to establish that this Court has general personal jurisdiction over Defendants.

### b. Specific Jurisdiction

The Court will next consider whether Plaintiffs have established that this Court has specific personal jurisdiction over Defendants. To assess specific personal jurisdiction, the Fourth Circuit applies a three-prong test: "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State: (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *ALS Scan. Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

As to the first prong, courts consider a variety of factors to determine whether a defendant has engaged in purposeful availment in the business context, including whether the defendant maintains offices or agents in the forum state; whether the defendant owns property in the forum state; whether the defendant reached into the forum state to solicit or initiate business;

---

[7] In their brief, Plaintiffs assert that "virtually half of M&O's revenue was generated by Mr. Winkfield's and his former partners' Maryland-based businesses." ECF No. 22 at 26. Plaintiffs cite to no evidence to substantiate this statement.

whether the parties contractually agreed that the law of the forum state would govern disputes; whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; the nature, quality, and extent of the parties' communications about the business being transacted; and whether the performance of contractual duties was to occur within the forum. *Consulting Eng'rs Corp.*, 561 F.3d at 278. The second prong "requires that the defendant's contacts with the forum state form the basis of the suit." *Id.* at 278–79. As to the third prong, which "ensures that litigation is not so gravely difficult and inconvenient as to place the defendant at a severe disadvantage in comparison to his opponent," courts consider "[t]he burden on the defendant, interests of the forum state, and the plaintiff's interest in obtaining relief." *Tire Eng'g and Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 303 (4th Cir. 2012). For the reasons that follow, the Court concludes that it has specific personal jurisdiction over Defendants with respect to the fraud-based claims alleged in Counts I and II, but not with respect to the defamation-based claims alleged in Counts III through VIII.

Beginning with the fraud-based claims, Plaintiffs have sufficiently alleged that Defendants purposefully directed their activities toward Plaintiffs in Maryland. M&O, through Petersmarck, "cold-called" Plaintiff Winkfield in Maryland to offer marketing and regulatory compliance services to his Maryland-based financial advisory business. ECF No. 22-1 ¶ 2; *see Giannaris v. Cheng*, 219 F. Supp. 2d 687, 692 (D. Md. 2002) (stating that the "strongest factor" in determining whether defendant has sufficient minimum contacts with the forum state is whether the defendant initiated a business relationship with plaintiff in some way). Moreover, although the Complaint is somewhat vague on this point, this cold-call appears to have prompted a series of communications between Winkfield and Dennis Brown, Petersmarck, and Ryan Brown, at least some of which appear to have occurred while Winkfield was in Maryland, during

which Defendants allegedly made misrepresentations about M&O and the services it could provide to Plaintiffs in Maryland. ECF No. 1 ¶¶ 4–7, 12; *see ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 277 (4th Cir. 2002) (finding that sending false information to the forum state was sufficient to create personal jurisdiction for fraud claims); *A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, 795 F. Supp. 2d 365, 371–72 (D. Md. 2011) (finding that a series of telephonic communications to the forum state prior to an agreement can constitute purposeful availment). Once Winkfield officially retained M&O's services, Defendants' communications to and from Maryland continued, including in-person visits by Petersmarck and Dennis Brown to Plaintiffs and other Maryland-based clients. ECF No. 1 ¶¶ 13–17, 19–21. M&O, through Petersmarck, Dennis Brown, and other M&O employees, provided marketing services to Plaintiffs in Maryland, including the coordination of local television appearances, *id.* ¶ 10, and Ryan Brown specifically provided Plaintiffs Maryland-focused regulatory compliance advice, *id.* ¶ 18. These contacts are not merely "random" or "fortuitous," but instead suffice to create a "substantial connection" between the forum state and each of the Defendants. *See Maoz*, 795 F. Supp. 2d at 371 (stating that "'even a single act' between an in-state resident and a foreign entity may suffice to establish personal jurisdiction, as long as it creates a 'substantial connection' with the forum" (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985))).

Plaintiffs' fraud-based claims also appear to arise, at least in part, out of these contacts. Viewing the facts in the light most favorable to Plaintiffs, as the Court must at this stage, at least some of the alleged misrepresentations or omissions about which Plaintiffs complain appear to have taken place in Maryland or were directed at Plaintiff Winkfield while he was in Maryland and concern services Defendants would be able to provide to Plaintiffs in Maryland.

Finally, although neither party directly addresses whether exercise of personal jurisdiction over Defendants with respect to the fraud-based claims would be constitutionally reasonable, the Court is satisfied that it would. First, the Defendants "purposeful[ly] interject[ed]" themselves into the forum state by soliciting Maryland business and negotiating a relationship with a Maryland-based business, *see Copiers Typewriters Calculators, Inc. v. Toshiba Corp.*, 576 F. Supp. 312, 320 (D. Md. 1983), and thus "should reasonably [have] anticipate[d] being haled into court there." *See World-Wide Volkswagen*, 444 U.S. at 297. Moreover, although Michigan residents certainly face a greater burden litigating in Maryland than do Maryland residents, this is not dispositive, *see Tire Eng'g and Distrib., LLC*, 682 F.3d at 304, and the "[m]odern means of communication and transportation" that enabled Defendants to conduct business in Maryland "also diminish the burden of defending a lawsuit" in Maryland, *see Copiers Typewriters Calculators, Inc.*, 576 F. Supp. at 320–21. Finally, Plaintiffs certainly have an interest in having their rights "recognized and vindicated," *see CFA Inst, v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 297 (4th Cir. 2009), and Maryland has an interest in protecting its residents against tortious injury, particularly when those residents' grievances may involve issues of Maryland law, *see id.*; *Prince v. Illien Adoptions Int'l, Ltd.*, 806 F. Supp. 1225, 1230–31 (D. Md. 1992).

Defendants' primary argument against this Court asserting personal jurisdiction over individual Defendants Dennis Brown, Petersmarck, and Ryan Brown is that any contacts these individual defendants had with Maryland were on behalf of M&O, and therefore these contacts cannot subject them to suit in Maryland in their personal capacities. Defendants correctly assert that "[w]hen the defendant is a nonresident corporate agent, the court must examine the defendant's contacts with the forum state in his individual capacity." *Becker v. Noe*, No. ELH–

18–931, 2019 WL 1415483, at *27 (D. Md. Mar. 27, 2019) (citing *Birrane v. Master Collectors, Inc.*, 738 F. Supp. 167, 169 (D. Md. 1990)). But Defendants' argument that contacts made on behalf of a corporation cannot subject the individual to personal jurisdiction misconstrues the case law. *See ePlus Tech., Inc.*, 313 F.3d at 177 (stating that individual defendant could be subject to personal jurisdiction in forum state if she "had sufficient contacts with [the forum state], even if those contacts were made ostensibly on behalf of [her corporate employer]").

"Personal jurisdiction over an individual officer, director, or employee of a corporation does not automatically follow from personal jurisdiction over the corporation." *Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilese Tech. Fin. Grp., Inc.*, 299 F. Supp. 2d 505, 513–14 (D. Md. 2004). However, where the corporate agent is directly and personally involved in the alleged injury, the individual defendants' status as agents of their employer does not shield their contacts with the forum state from consideration in the personal jurisdiction analysis. *See Columbia Briargate Co. v. First Nat'l Bank in Dallas*, 713 F.2d 1052, 1061 (4th Cir. 1983) (stating that where "the agent has come into the forum and while there has committed a tort, whether for his personal benefit or for the benefit of his employer he has thereby 'purposefully avail[ed] [himself] of the laws of another state' and of the privilege of conducting activities within the forum state"); *Gault v. Thacher*, 367 F. Supp. 3d 469, 477 (D.S.C. 2018) (stating that a defendant's corporate officer status "does not prevent a court from exercising personal jurisdiction over a foreign corporate officer if that officer has otherwise exerted the sufficient minimum contacts with the forum state"); *D'Addario v. Geller*, 264 F. Supp. 2d 367, 381–82 (E.D. Va. 2003) (stating that the corporate agents "cannot hide behind a 'fiduciary shield' to avoid personal jurisdiction" where they "allegedly committed acts under the guise of acting on behalf of and for the benefit of the corporation"); *Rhee Bros., Inc. v. Han Ah Reum Corp.*, 178 F.

Supp. 2d 525, 532 (D. Md. 2001) (stating that although "contacts as a corporate representative on corporate business do not give rise to personal jurisdiction," there could still be personal jurisdiction over representative defendant if "he was culpably involved in the commission of a" tort).

Here, because the Complaint and jurisdictional evidence demonstrates that Defendants Dennis Brown, Petersmarck, and Ryan Brown personally had contact with Maryland while making the misrepresentations that form the basis for Plaintiffs' fraud-based claims, and they are not named as defendants simply by virtue of their connection to M&O, their contacts can subject them to personal jurisdiction in Maryland. *See ePlus Tech., Inc.*, 313 F.3d at 177; *Columbia Briargate Co.*, 713 F.2d at 1061. And, as the Court has already determined, those contacts are sufficient such that personal jurisdiction does not offend due process. Accordingly, Plaintiffs have sufficiently established a prima facie case for specific personal jurisdiction over Defendant M&O and the individual Defendants with respect to the fraud-based claims.

In contrast, Plaintiffs have failed to establish that this Court has specific personal jurisdiction over Defendants with respect to the defamation-based claims. As to the January and March Cease & Desist Letters, regardless of any business Defendants may have solicited or conducted in Maryland, claims based on the Letters do not "arise out of" these contacts because the Letters were sent from M&O's office in Michigan to the recipients in North Carolina and Virginia, respectively, *see ALS Scan. Inc.*, 293 F.3d at 712, and there is no specific allegation that Plaintiffs felt any harmful effects of the Letters in Maryland, *see Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting*, No. GLR–16–2974, 2017 WL 2778825, at *8 (D. Md. June 26, 2017).[8]

---

[8] The Court will also note that these Letters were not based on M&O's relationship with Plaintiffs, but rather with OWRS, Plaintiff Winkfield's former firm.

Regarding the Ripoff Post, the Complaint alleges that it was "submitted anonymously." ECF No. 1 ¶ 61. Although Plaintiffs assert that it "contains clear indications that it was written, edited or finalized by Defendant Petersmarck," they have not enlightened the Court as to those indications.[9] Thus, the Court can make no reasonable inference that Defendants M&O, Dennis Brown, Petersmarck, or Ryan Brown had anything to do with the Post, and so it cannot conclude that Defendants' contacts with Maryland form the basis for the Post. Because Defendants' contacts with Maryland do not form the basis for the defamation-based claims against them, this Court lacks personal jurisdiction over the Defendants with respect to the defamation-based claims alleged in Counts III through VIII. *See Consulting Eng'rs Corp.*, 561 F.3d at 278. These claims are dismissed.

### ii.   Maryland's Long-Arm Statute

Because the Court has determined that personal jurisdiction over Defendants with respect to the fraud-based claims satisfies constitutional due process, it must also determine whether exercise of personal jurisdiction is authorized by Maryland's long-arm statute. *See Mackey*, 391 Md. at 141 n.6. Plaintiffs assert jurisdiction under three sub-sections of the Maryland long-arm statute. *See* MD. CODE ANN., CTS. & JUD. PROC. §§ 6-103(b)(1), (2), (4). Section 6-103(b)(1) authorizes jurisdiction when a person "[t]ransacts any business or performs any character of work or service in the State." Section 6-103(b)(2) extends jurisdiction over a person who "[c]ontracts to supply goods, food, services, or manufactured products in the State." Section 6-103(b)(4) applies to a person who "[c]auses tortious injury in the State or outside of the State by

---

[9] In their opposition, Plaintiffs state that Defendant Petersmarck's counsel has conceded that Petersmarck is responsible for the Post and that the only other person who could have possibly made the Post denies having done so. ECF No. 22 at 35 & n.7. The Court will disregard these assertions because Plaintiffs cannot properly amend the Complaint through briefing. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013)).

an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, foods, services, or manufactured products used or consumed in the State." Each of these sub-sections only permits jurisdiction over causes of action "arising from [the] act[s] enumerated" in those sections. *Id.* § 6-103(a).

Defendants concede that § 6-103(b)(1) of the long-arm statute confers personal jurisdiction over M&O because it transacts business in Maryland, but they dispute the statute's coverage of the individual Defendants. ECF No. 25 at 8. "[E]ven a single contact with the forum can satisfy the transaction of business standard in subsection (b)(1)." *Hausfeld v. Love Funding Corp.*, 16 F. Supp. 3d 591, 599 (D. Md. 2014). Here, Defendant Petersmarck personally reached out to Plaintiffs in Maryland in order to solicit business and all three individual Defendants transacted business in Maryland by playing a role, through statements they made about M&O's ability to provide services, in the negotiation and finalization of an agreement for M&O to provide services to Plaintiffs' Maryland-based business and then actually providing those services. *See Maoz*, 795 F. Supp. 2d at 370 (finding that defendants "'[t]ransact[ed] … business' in Maryland by negotiating and finalizing a franchise agreement with" a Maryland business, and were therefore covered by § 6-103(b)(1)). Thus, Plaintiffs have made a prima facie case that the long-arm statute covers the individual Defendants.

In summary, the Court has personal jurisdiction over Defendants with respect to the fraud-based claims alleged in Counts I and II but lacks personal jurisdiction over Defendants with respect to the defamation-based claims in Counts III through VIII. Thus, Counts III through VIII are dismissed for lack of personal jurisdiction.

### B. Failure to State a Claim

Regardless of the Court's conclusions as to personal jurisdiction, the Complaint also fails to state any claim for which relief can be granted.[10] Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). However, Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB–12–237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). A motion to dismiss under 12(b)(6) "test[s] the adequacy of a complaint." *Prelich v. Med. Res., Inc.*, 813 F. Supp. 2d 654, 660 (D. Md. 2011) (citing *German v. Fox*, 267 F. App'x 231, 233 (4th Cir. 2008)). Motions to dismiss for failure to state a claim do "not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Prelich*, 813 F. Supp. 2d at 660 (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). To overcome a Rule 12(b)(6) motion, a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating the sufficiency of the Plaintiff's claims, the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the Plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). However, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255

---

[10] Because Plaintiffs will be given the opportunity to amend the Complaint, if it chooses, and attempt to address deficiencies in its jurisdictional allegations regarding Counts III-VIII, the Court will address the merits of all claims.

(4th Cir. 2009). The court should not grant a motion to dismiss for failure to state a claim unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50 (1989)).

Additionally, where, as here, a complaint alleges claims sounding in fraud, a party must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires "that a plaintiff alleging fraud must make particular allegations of the time, place, speaker, and contents of the allegedly false acts or statements." *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 249–50 (D. Md. 2000); *see also U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (describing the "who, what, when, where, and how" of the fraud claim). Despite these heightened requirements, "a court should hesitate to dismiss if it finds (1) that the defendant[s] [have] been made aware of the particular circumstances for which [they] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Nat'l Mortg. Warehouse, LLC v. Trikeriotis*, 201 F. Supp. 2d 499, 505 (D. Md. 2002) (describing pleading requirements in case of fraudulent conveyance) (internal citations omitted).

The Court will address each of Plaintiffs' claims separately.

### i. Fraud (Counts I and II)

In Maryland, a fraud claim can be based on an affirmative misrepresentation or a nondisclosure or concealment of a material fact. *See Hoffman v. Stamper*, 385 Md. 1, 28 n.12 (2005). Plaintiffs' fraud-based claims "arise from Defendants' carefully crafted efforts to present themselves as a sophisticated 'billion-dollar' organization with the skills and resources to" build Plaintiffs' reputations, market Plaintiffs' financial advisory services, and help Plaintiffs to

navigate Maryland's regulatory landscape, when instead Defendants "were really a collection of eight companies sharing a single Southfield, Michigan office suite, with an unsavory litigation history and a felon overseeing Defendants' regulatory compliance and other services." ECF No. 22 at 8.

In terms of affirmative misrepresentations, Plaintiffs claim that Defendants falsely represented that M&O was a "billion dollar insurance marketing organization" run by a "genius" and "savant" and that Dennis Brown was the sole owner of M&O. ECF No. 1 ¶¶ 22–27, 28–30.[11] To state a claim for fraud based on affirmative misrepresentations, the plaintiff must plead that "(1) the defendant made a false statement of fact; (2) the defendant knew the statement was false or acted with reckless disregard for the truth of the statement; (3) the defendant made the statement for the purpose of defrauding the plaintiff; (4) the plaintiff reasonably relied on the false statement; and (5) the plaintiff was damaged as a result." *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 465 (D. Md. 2013) (citations omitted). "Reasonable, detrimental reliance upon a misrepresentation is an essential element of a cause of action for fraud, and such reliance must be pleaded with particularity." *Steven B. Snyder, M.D., P.A. v. Cynosure, Inc.*, No. RDB–18–2049, 2019 WL 1386727, at *6 (D. Md. Mar. 27, 2019) (quoting *Learning Works, Inc. v. The Learning Annex, Inc.*, 830 F.2d 541, 546 (4th Cir. 1987)) (internal quotation marks omitted).

Here, the Complaint fails to sufficiently plead with particularity Defendants' false statements of fact, how Plaintiffs reasonably relied on them, and the damage they suffered as a result. First, the Complaint refers only to false statements made by M&O or by Defendants collectively, ECF No. 1 ¶¶ 22, 28, thus lacking the required particularity as to each individual

---

[11] To the extent that Plaintiffs are suing Defendants based on any other misrepresentations, Plaintiffs have provided no specifics as to those misrepresentations in the Complaint.

Defendant's involvement in the alleged fraud, *see Adams*, 193 F.R.D. at 251 ("[W]here there are multiple defendants, plaintiffs must, where the gravamen of the claim is fraud, allege all claims with particularity as to each of the defendants.").

Next, the Complaint fails to allege when Plaintiffs viewed the alleged misrepresentations on M&O's website or when they heard them and from whom, why these misrepresentations were material to Plaintiffs' decision to enter a business relationship with Defendants, or how they reasonably relied upon them. *See Cynosure, Inc.*, 2019 WL 1386727, at *6 (stating that a plaintiff must explain "when or where" he encountered the false statements, and, "more importantly, how they were relied upon"); *Gross v. Sussex Inc.*, 332 Md. 247, 258 (1993) (stating that misrepresentations are actionable only if "material," meaning the existence or nonexistence of the fact is "a matter to which a reasonable man would attach importance in determining his choice of action"). Although Plaintiffs contend in their opposition that Defendants made false representations about M&O's size and sophistication during the course of the parties' business negotiations, aside from stating that, "[b]eginning in 2017," Defendants falsely represented that Dennis Brown was the sole owner of M&O, ECF No. 1 ¶ 28, the Complaint does not actually allege when the business negotiations began, when the misrepresentations regarding M&O's size and sophistication occurred, or how and when Plaintiffs relied on the alleged misrepresentations by entering into a business relationship with Defendants.[12] A nonspecific allegation that Defendants misrepresented themselves as "a highly sophisticated 'billion dollar marketing organization' owned and operated by a 'genius' and 'savant,'"[13] ECF No. 1 ¶ 82, and a

---

[12] Although Plaintiffs include a jurisdictional affidavit in response to Defendants' 12(b)(2) motion to dismiss for lack of personal jurisdiction, the Court cannot consider it when assessing the merits of Defendant's 12(b)(6) motion for failure to state a claim. *See Lindsey-Grobes v. United Airlines, Inc.*, No. GJH–14–857, 2014 WL 5298030, at *5 (D. Md. Oct. 14, 2014) ("An affidavit attached to an opposition to a motion to dismiss … is no place for Plaintiff to add material facts to a deficient complaint.")

[13] In addition to other deficiencies in the Complaint, these specific allegations also fail to support a claim because they are "vague generalities, statements of opinion, or puffery - - which are deemed non-cognizable." *Baney Corp.*

conclusory allegation that Plaintiffs "did reasonably rely upon Defendants' misrepresentations by retaining Defendants," *id.* ¶ 95, are simply not sufficient to satisfy Rule 9(b)'s pleading requirements. *See Adams*, 193 F.R.D. at 251; *Cynosure, Inc.*, 2019 WL 1386727, at *6.

Finally, the Complaint lacks any allegations as to the harm Plaintiffs suffered as a result of their reliance on the alleged misrepresentations, alleging only that they "have incurred substantial damages as a direct result of Defendants' fraud and misrepresentations." ECF No. 1 ¶ 92; *see Hoffman*, 385 Md. at 41 (requiring that a plaintiff identify some "compensable injury as a result of the misrepresentation). This is simply a recitation of an element of a cause of action, which is insufficient to satisfy Rule 8's pleading standards. *See Nemet Chevrolet,* Ltd, 591 F.3d at 255. Thus, the Complaint fails to state a claim based on Defendants' alleged affirmative misrepresentations.

The Complaint also alleges that Defendants concealed or failed to disclose that M&O was associated with CoreCap, that M&O was previously the defendant in a discrimination lawsuit, and that Defendant Petersmarck has a criminal record and lacks certain licenses. ECF No. 1 ¶¶ 35–41, 42, 46–57. To state a claim for fraud based on concealment or nondisclosure, a plaintiff must prove that "(1) Defendant owed Plaintiff a duty to disclose a material fact; (2) Defendant failed to disclose that fact; (3) Defendant intended to defraud or deceive Plaintiff; (4) Plaintiff took action in justifiable reliance on the concealment; and (5) Plaintiff suffered damages as a result of Defendant's concealment." *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 628–29 (D. Md. 2003) (citing *Green v. H & R Block, Inc.*, 355 Md. 488, 525 (1999)). The plaintiff "must prove *either* that Defendant had a duty to disclose a material fact to

---

*v. Agilysys NV, LLC,* 773 F. Supp. 2d 593, 608 (D. Md. 2011) (citing cases); *Dierker v. Eagle Nat'l Bank,* 888 F. Supp. 2d 645, 651 (D. Md. 2012) (A fraud claim cannot "arise out of opinions or mere puffery – statements that are extravagant in scope and measure and elusive in meaning.").

them and failed to do so, or that Defendant concealed a material fact for the purpose of defrauding Plaintiff." *Id.* (citing *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 551 (D. Md. 1997)).

Here, the Complaint fails to plead a viable claim based on nondisclosure because Plaintiffs provide no legal authority for their conclusory allegation that "Defendants owed Plaintiffs a duty to disclose material facts about its business operations, affiliations, background, and personnel, including, but not limited to, the licensure of its employees." ECF No. 1 ¶ 94. The Complaint also lacks any allegations that would establish a "special duty to disclose." *See Hogan v. Maryland State Dental Ass'n*, 155 Md. App. 556, 566 (Md. Ct. Spec. App. 2004) (stating that "[a] duty to disclose arises in certain relationships such as a confidential or fiduciary relationship").

With respect to any fraudulent concealment claims, the Complaint fails to plead any nonconclusory allegations as to how Defendants actively concealed facts from Plaintiffs. The Complaint alleges that Defendants "actively [hid]" the CoreCap affiliation, ECF No. 1 ¶ 96, "hid[]" M&O's history of discrimination and Defendant Petersmarck's criminal record, *id.* ¶¶ 97, 98, concealed the criminal record from internet search engines, *id.* ¶ 5, and "never disclosed" that Petersmarck was unlicensed in Michigan or Maryland, *id.* ¶ 51. These allegations are conclusory and fail to provide the necessary particularity as to how Defendants actively concealed information from Plaintiffs. *See Adams*, 193 F.R.D. at 249–50; *U.S. ex rel. Wilson*, 525 F.3d at 379.

The Complaint also lacks any allegations suggesting that these facts were material. *Odyssey Travel Ctr., Inc.*, 262 F. Supp. 2d at 628–29 (requiring a plaintiff to prove that the defendant concealed a *material* fact). Regarding Defendants' affiliation with CoreCap, the

Complaint alleges only that a CoreCap financial advisor had embezzled funds from CoreCap clients and CoreCap "tried to lowball the victims" and refused to "make its clients whole," *id.* ¶ 38–41, but it fails to explain why this information was material to Plaintiffs' decision to engage Defendants' insurance marketing services. Similarly, with respect to the discrimination case and Defendant Petersmarck's criminal record, the Complaint alleges only that M&O had previously been the defendant in a discrimination case, *id.* ¶¶ 42–45, and that Petersmarck had a criminal history, *id.* ¶¶ 5, 60, but it fails to allege why the existence of either the case or the record would be material to Plaintiffs' decision to engage Defendants' insurance marketing services.

Regarding Defendant Petersmarck's lack of Michigan and Maryland licenses to sell or solicit insurance or provide insurance counseling or advice, the Complaint fails to allege facts suggesting that Defendant Petersmarck actually needed these licenses and so the Court is unable to infer that his lack of licensure was a material fact. Under Michigan law, a person shall not "sell, solicit, or negotiate insurance in [Michigan]" without a license. MICH. COMP. LAWS ANN. § 500.1201a(1). Maryland law similarly requires a license to act as an insurance producer, which is a person that "sells, solicits, or negotiates insurance contracts." MD. CODE ANN., INS. §§ 1-101(u)(1), 10-103(c). Maryland and Michigan law define "solicit" as attempting to sell insurance or asking or urging a person to apply for a particular kind of insurance from a particular company. *See* MD. CODE ANN., INS. § 1-101(*ll*); MICH. COMP. LAWS ANN. § 500.1201(o). Although the Complaint lacks clarity as to what exactly Defendants were hired to do for Plaintiffs, it appears that Plaintiffs hired M&O for its marketing services. *See* ECF No. 1 ¶ 46. The Complaint contains no allegations that Defendant Petersmarck sold insurance for Plaintiffs or asked or urged anyone else to apply for insurance through them. As a result, the Complaint contains no allegations that Defendant Petersmarck needed a license to sell or solicit insurance in

order to provide services to Plaintiffs, so any concealment with respect to this sort of license would not have been material.

Similarly, the Complaint fails to allege that Petersmarck needed a license to act as a "counselor" or "adviser." Michigan law requires a license to serve as an "insurance counselor," which is a person who "audit[s] or abstract[s] policies or insurance or annuities, [and] provide[s] advice, counsel, or opinion with respect to benefits promised, coverage afforded, terms, value, effect, advantages, or disadvantages of a policy of insurance or annuity." MICH. COMP. LAWS ANN. § 500.1232. Maryland law requires a license to act as an "insurance adviser," which is a person who "examines or offers to examine a policy, annuity, contract, or pure endowment contract for the purpose of giving, or gives or offers to give, advice or information about … the terms, conditions, benefits, coverage, or premium of a policy, annuity contract, or pure endowment contract; or … the advisability of changing, exchanging, converting, replacing, surrendering, continuing, or rejecting a policy, annuity contract, or pure endowment contract or of accepting or procuring a policy, annuity contract, or pure endowment contract from an insurer." MD. CODE ANN., INS. § 10-201(b).

Here, the Complaint alleges that Defendant Petersmarck violated Michigan and Maryland law by performing "Life Insurance Reviews" for Plaintiff Winkfield and OWRS and developing and implementing insurance and securities sales methods for Plaintiffs without the proper license, ECF No. 1 ¶¶ 53–56, but it contains no allegations as to what the "Life Insurance Reviews" consist of, so the Court cannot determine if Defendant Petersmarck needed a license in order to provide them. As to the Complaint's limited allegations regarding Defendant Petersmarck's marketing services, under the Court's reading of Michigan and Maryland law, these services do not fall under the definition of "insurance counselor" or "insurance adviser."

Because the Complaint contains insufficient allegations to establish that Defendant Petersmarck needed any licenses to conduct the promised services for Plaintiffs, the Court cannot infer that any concealment of Defendant Petersmarck's lack of licensure was material to Plaintiffs' decision to engage Defendants' services.

Finally, even if Defendants did materially conceal M&O's connection to CoreCap, the discrimination case, and Petersmarck's criminal record and lack of licensure, the Complaint lacks any allegations as to the harm suffered by Plaintiffs as a result of Defendants' concealment, alleging only that Plaintiffs "have incurred substantial damages as a direct result of Defendants' fraud and misrepresentations." ECF No. 1 ¶ 105; *see Odyssey Travel Ctr., Inc.*, 262 F. Supp. 2d at 629. Again, this is simply a recitation of an element of a cause of action, which is insufficient to satisfy Rule 8's pleading standards. *See Nemet Chevrolet,* Ltd, 591 F.3d at 255. Accordingly, the fraud claims alleged in Counts I and II are dismissed.[14]

### ii. Tortious Interference with Contracts (Count III)

Plaintiffs claim that Defendants interfered with their contractual agreements with clients by posting the Ripoff Post and sending the January and March Cease & Desist Letters. ECF No. 1 ¶¶ 107, 109. "To establish a claim for wrongful interference with a contract, a plaintiff must demonstrate '(1) [t]he existence of a contract or a legally protected interest between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional inducement of the third party to breach or otherwise render impossible the performance of the

---

[14] In a footnote in their opposition, Plaintiffs request leave to amend should the Court determine that the Complaint fails to sufficiently allege the fraud-based claims in Counts I and II. ECF No. 22 at 34 n.6. Plaintiffs, however, have not included a proposed amended complaint, as required by Loc. R. 103.6(a), and they have not otherwise explained the nature of their proposed amendments. As a result, the Court is unable to make a determination as to whether amendment would be futile. *See Steinburg v. Chesterfield Cty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008) (stating that a court need not give leave to amend where "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile" (internal quotation marks omitted)). The Court therefore denies Plaintiffs' request for leave to amend without prejudice to filing a motion for leave to amend.

contract; (4) without justification on the part of the defendant; (5) the subsequent breach by the third party; and (6) damages to the plaintiff resulting therefrom.'" *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 353–54 (4th Cir. 2013) (quoting *Blondell v. Littlepage*, 185 Md. App. 123, 153–54 (Md. Ct. Spec. App. 2009)).

Here, the Complaint alleges that Petersmarck anonymously posted the Ripoff Post and Ryan Brown sent the January and March Cease & Desist Letters, ECF No. ¶¶ 61, 63, Petersmarck and Ryan Brown "sought to interfere with [Plaintiffs' contracts with clients]," *id.* ¶ 109, some of Plaintiffs' clients "are making arrangements to move business away from Plaintiffs and/or breach their agreements with Plaintiffs due to the concerns generated by the false and defamatory Ripoff Post," *id.* ¶ 111, "Plaintiffs' business partners have [] questioned Plaintiffs about potential improper use of M&O materials," *id.* ¶ 112, and the Ripoff Post and Letters "have cost, and are likely to continue to cost Plaintiffs damages in the form of lost revenue from existing clients, lost time responding to inquiries regarding the falsehoods, and lost opportunities," *id.* ¶ 113. Absent from the Complaint, however, are any nonconclusory allegations that Defendants intended to induce any of Plaintiffs' clients to breach a contract or that any of Plaintiffs' clients have actually breached a contract with Plaintiffs. *See Painter's Mill Grille, LLC*, 716 F.3d at 354 (requiring plaintiff to establish a breach by a third-party and finding that the "bare assertion that the [alleged statements] were made with requisite intent does not suffice" to state a claim for tortious interference with contract). Accordingly, the tortious interference with contract claim alleged in Count III is dismissed.

### iii. Tortious Interference with Prospective Business Advantage (Count IV)

Plaintiffs claim that Defendants interfered with Plaintiffs' future business relationships by posting the Ripoff Post. To state a claim for tortious interference with prospective business

advantage, the plaintiff must plead "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiff[] in [its] lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendant[] (which constitutes malice); and (4) actual damage and loss resulting." *Audio Visual Assocs., Inc. v. Sharp Elecs. Corp.*, 210 F.3d 254, 261 (4th Cir. 2000) (quoting *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs., Inc.*, 336 Md. 650 (1994)) (internal quotation marks omitted). The plaintiff "must identify a possible future relationship [or transaction] which is likely to occur, absent the interference, with specificity." *Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 546 (D. Md. 2006). Without this showing, it is difficult for the plaintiff to establish the defendant's wrongful intent or motive to damage the plaintiff's prospective business relationships. *Id.*

Here, aside from alleging that "[i]t is commercially reasonable to expect that Plaintiffs would generate new business inasmuch as new clients are frequently looking for Plaintiffs' services and both current and new clients have made inquiries to Plaintiffs regarding the defamatory Ripoff Post," ECF No. 1 ¶ 117, and making other similarly broad allegations, the Complaint fails to "identify a possible future relationship [or transaction] which is likely to occur, absent [Defendants'] interference, with specificity." *Baron Fin. Corp.*, 471 F. Supp. 2d at 546. Moreover, as the Court has noted several times already, there are no nonconclusory allegations tying Defendants to the Ripoff Post. Accordingly, the tortious interference with prospective business advantage claim alleged in Count IV is dismissed.

### iv.   Defamation, Defamation *Per Se*, and Slander (Counts V, VI, and VIII)

Plaintiffs claim that the Ripoff Post and the January and March Cease & Desist Letters constitute defamation, defamation *per se*, and slander. ECF No. 1 ¶¶ 123–138. "In order to plead

properly a defamation claim under Maryland law, a plaintiff must allege specific facts establishing four elements to the satisfaction of the fact-finder: (1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Piscatelli v. Van Smith*, 424 Md. 294, 306 (2012) (quoting *Indep. Newspapers, Inc. v. Brodie*, 407 Md. 415, 441 (2009)) (internal quotation marks omitted).[15] "For the purposes of the first element, a 'defamatory statement' is one that tends to expose a person to 'public scorn, hatred, contempt, or ridicule,' which, as a consequence, discourages 'others in the community from having a good opinion of, or associating with, that person.'" *Id.* "A statement that is defamatory *per se* is one for which the 'words themselves impute the defamatory character,' such that the plaintiff need not plead additional facts demonstrating their defamatory nature." *Doe v. Johns Hopkins Health Sys. Corp.*, 274 F. Supp. 3d 355, 365–66 (D. Md. 2017) (quoting *Metromedia, Inc. v. Hillman*, 285 Md. 161, 172 (1979)). The third element "requires a showing that, at a minimum, the party making the false statement acted negligently." *Id.* at 366 (citing *Hearst Corp. v. Hughes*, 297 Md. 112, 119–23 (1983)). "Negligence is any conduct, except conduct recklessly disregardful of an interest of others, which falls below the standard established by law for protection of others against unreasonable risk of harm. It does not exist apart from the facts and circumstances upon which it is predicated, necessarily involves the breach of some duty owed by a defendant to the plaintiff, and is inconsistent with the exercise of ordinary care." *Mayor and City Council of Baltimore v. Hart*, 395 Md. 394, 410–11 (2006) (internal citations and quotation marks omitted). Actual malice, a higher degree of fault, requires a showing that the

---

[15] Slander is simply a type of defamation, *see Publish Am., LLP v. Stern*, 216 Md. App. 82, 99 n.16 (Md. Ct. Spec. App. 2014), so its elements are the same as a claim for defamation, *see Henderson v. Claire's Stores, Inc.*, 607 F. Supp. 2d 725, 730 (D. Md. 2009).

defendant made the defamatory statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *Batson*, 325 Md. at 728 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)) (internal quotation marks omitted). "For the fourth element, actual harm must generally be established, but in cases in which the statement was defamatory *per se* and was made with actual malice, harm may be presumed." *Doe*, 274 F. Supp. 3d at 366.

Here, the Complaint fails to state a claim as to the January and March Cease & Desist Letters. First, the January Cease & Desist Letter does not refer to Plaintiffs at all, so it cannot expose Plaintiffs to "public scorn, hatred, contempt, or ridicule." *See Piscatelli*, 424 Md. at 306. As for the March Cease & Desist Letter, although the Complaint does allege that it contained a false statement that Plaintiff Winkfield has continued to use M&O's copyrighted materials without authorization, ECF No. 1-10, the Complaint only contains a conclusory allegation that the statement was "intentional, willful, and/or negligent and calculated to cause damage to Plaintiffs' lawful business," ECF No. 1 ¶¶ 128, 136. This allegation is nothing more than a "legal conclusion[], element[] of a cause of action, and bare assertion[] devoid of further factual enhancement" because it does not allege what Defendants did or did not do to fall below the appropriate standard of care, *see Nemet Chevrolet, Ltd*, 591 F.3d at 255, or how the allegedly false statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not," *see Batson*, 325 Md. at 728. The Complaint therefore fails to plausibly allege that Defendants are legally at fault for the March Cease & Desist Letter. *See Piscatelli*, 424 Md. at 306.

The Complaint also fails to state a claim based on the Ripoff Post because it lacks any specific factual allegations that any of the Defendants were responsible for the Post. As for Ryan

Brown and Dennis Brown, there are no factual allegations that they actually made the Post or were negligent or malicious in doing so. As for Defendant Petersmarck, the Complaint alleges only that the Post "was submitted anonymously," but it "contains clear indications that it was written, edited or finalized by Defendant Petersmarck." ECF No. 1 ¶ 61. Without any elaboration as to these "clear indications," the Court need not accept Plaintiffs' "unwarranted inferences" as true. *See Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). As for M&O, even if the Court did accept the unwarranted inference that Defendant Petersmarck made the Post, there are no factual allegations establishing that he did so within the scope of his employment relationship with M&O, thus making M&O vicariously liable for the Post. *See Oaks v. Connors*, 660 A.2d 423, 426 (Md. 1995). Accordingly, the defamation, defamation *per se*, and slander claims alleged in Counts V, VI, and VIII are dismissed.

### v. False Light Invasion of Privacy (Count VII)

Plaintiffs claim that the Ripoff Post and the January and March Cease & Desist Letters also gave publicity to matters that placed Plaintiffs in a false light. ECF No. 1 ¶ 141. "The elements of a claim of false light invasion of privacy are: (1) publicity in a false light before the public; (2) which a reasonable person would find highly offensive; and (3) that the actor had knowledge of or acted in reckless disregard of the publicized matter placing plaintiff in a false light." *Hoai Thanh v. Ngo*, No. PJM–14–448, 2015 WL 2227923, at *6 (D. Md. May 8, 2015).

Here, there are no allegations that the January and March Cease & Desist Letters went to the public at large because they were sent to only two people and there are no allegations to suggest that the contents would in any way become public knowledge. *See Holt v. Camus*, 128 F. Supp. 2d 812, 817 (D. Md. 1999) ("Under the first prong of a false light claim, a plaintiff must show that the offending statements have been communicated to the public at large or to so many

persons that the matter must be regarded as substantially certain to become one of public knowledge."). And as for the Ripoff Post, again, the Complaint lacks any factual allegations tying it to the individual Defendants or establishing that M&O would be vicariously liable for the Post. Accordingly, the false light invasion of privacy claim alleged in Count VII is dismissed.

## IV.     EMERGENCY MOTION FOR INJUNCTIVE RELIEF

Plaintiffs have also filed an Emergency Motion for Injunctive Relief requesting that the Court prohibit Defendants from taking discovery from Plaintiff Winkfield in *M&O Mktg., Inc. v. Aimee Spencer-Tiemann*, No. 2019-174600-CB (Mich. Cir. Ct.), a breach of contract case that M&O filed against a former employee in the Michigan Circuit Court for the County of Oakland on June 14, 2019. Plaintiff contends that Defendants are attempting to use the Michigan case to sidestep this Court's Local Rule 104.4, which states that "discovery shall not commence … until a scheduling order is entered," and will use the Michigan discovery process to take discovery that is material to this case before the Court enters a scheduling order. Because the Court has dismissed all claims in this case, and therefore Local Rule 104.4 will no longer be in effect, Plaintiffs' Emergency Motion for Injunctive Relief is denied as moot.

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Strike Affidavit of Ryan Brown, or in the Alternative, Motion to File Surreply is granted, in part, and denied in part, Defendants' Motion to Dismiss is granted, and Plaintiffs' Emergency Motion for Injunctive Relief is denied as moot. A separate Order shall issue.


Date: March    20, 2020                            /s/_____
                                                   GEORGE J. HAZEL
                                                   United States District Judge