IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FINLEY ALEXANDER WEALTH
MANAGEMENT, LLC,, *et al.*,

    Plaintiffs,

v.

M&O MARKETING, INC., *et al.*,

    Defendants.

Civil No. **19-1312 PJM**

## MEMORANDUM OPINION

In advance of trial, Defendants M&O Marketing, Inc. and Dennis Brown (collectively "M&O") have jointly filed a Motion in Limine to Exclude the Opinions and Testimony of Plaintiffs' Expert David Witherspoon (ECF Nos. 183, 184). Defendant Edward Petersmarck has joined in M&O's Motion (*see* ECF No. 187) and has filed his own Motion in Limine to Forbid Any Use of or Reference to His Prior Criminal Record (ECF No. 194). Plaintiffs Finley Alexander Wealth Management, LLC ("Finley Alexander") and the Estate of Kyle Winkfield have also filed a Motion in Limine to Exclude Defense Expert Joel Lesch, and Mr. Winkfield's Private Text Messages (ECF No. 196). The parties have filed appropriate oppositions and replies to the pending Motions (ECF Nos. 189, 200, 206, 209, 212). No hearing is necessary. *See* D. Md. Local R. 105.6.

For the following reasons, the Court will **GRANT** Petersmarck's Motion in Limine to Forbid Any Use of or Reference to His Prior Criminal Record (ECF No. 194), **GRANT IN PART AND DENY IN PART** Defendants' Motion in Limine to Exclude the Opinions and Testimony of David Witherspoon (ECF Nos. 183, 184, 187), and **DENY** Plaintiffs' Motion in

1

Limine to Exclude Defense Expert Joel Lesch, and Mr. Winkfield's Private Text Messages (ECF No. 196).

## I. Background

***The Parties.*** Finley Alexander was a Rockville, Maryland-based financial advisory firm founded by Kyle Winkfield upon his departure from his prior firm, Odell, Winkfield, Roseman & Shipp, LLC ("OWRS"). Winkfield, previously a Plaintiff in this case, passed away unexpectedly in early 2023 while this case was pending, so his Estate has entered the case as the party in interest in his stead. *See* ECF Nos. 130, 131.

M&O Marketing is a conglomerate of eight or more entities managed through a single headquarters in Southfield, Michigan. ECF No. 119 ¶ 14. M&O provides marketing services for companies, in addition to acting as a "wholesaler" of certain annuities products in Maryland. At all relevant times, Dennis Brown was an owner and Chief Executive Officer of M&O, *id.* ¶ 15, and Edward Petersmarck was M&O's Executive Director of Practice Development. *Id.* ¶ 16.

***Prelude to the Present Dispute.*** Plaintiffs allege that beginning in 2015 (after aggressive solicitation by M&O), OWRS entered into a four-year contract with M&O whereby M&O would provide certain marketing and annuities services. *Id.* ¶¶ 19-24. Under the contract, OWRS was authorized to sell annuities in Maryland, availing itself of M&O's status as a "wholesaler" of those products. *See id.* ¶¶ 34, 37-39.

Plaintiffs claim that in 2019, OWRS declined to renew its contract with M&O, *see id.* ¶¶ 44-45, and state that, soon thereafter, Defendants began making defamatory comments about Winkfield. *See id.*

The allegedly defamatory comment at the heart of this dispute is a March 2019 internet post on the website "RipoffReport.com" said to have been made by Petersmarck at the behest of M&O and Brown, which concerned a 2018 annuities transaction handled by Winkfield.

***The Underlying Annuities Transaction.*** In early 2018, Winkfield, while working for OWRS, engaged in an annuities transaction for a client, in which, Defendants say, Winkfield defrauded the client. *See* 204 at 4-8. Plaintiffs, for their part, deny that Winkfield ever misled or defrauded the client. *See id.* at 2.

For whatever the reason may have been, the client in question was dissatisfied with the transaction with Winkfield, and she apparently confronted Winkfield over his handling of the transaction and threatened to report him to state regulators. *See id.* at 6. According to Defendants, Winkfield forwarded to Petersmarck a copy of an unflattering email the client had sent to Winkfield. *See id.* at 7.

***The Ripoff Report Post.*** Based on the letter, in March 2019, Petersmarck allegedly posted a comment on a website known as RipoffReport.com, recounting the events of Winkfield's 2018 transaction with the client as Defendants perceived it. *See id.* at 8. The Ripoff Report post claimed (and to this day continues to claim) that Winkfield defrauded the client, and goes on to warn prospective clients to "BEWARE" of doing business with Winkfield and OWRS (and, by extension, with Winkfield's new firm, Finley Alexander, Plaintiff here). *See* ECF No. 119 ¶ 55.[1]

---

[1] The Ripoff Report post reads:

> The claim is that Kyle Winkfield and his firm, then OWRS Firm, now Finley Alexander Wealth Management[,] attempted to defraud [a client] by moving $559,000 of [the client's] money from a current annuity to a new annuity. Kyle Winkfield promised [the client] a "bonus" of $12,094 to move the money. There was a loss of money to move the $559,000 due to a "surrender charge" from the original Ohio investment where the money was invested.
>
> Kyle Winkfield promised that the loss would be "made whole" in the move to his new recommendation. That was simply not true. After speaking with the new annuity carrier it was found that there was no real "bonus" to the money that was moved to Kyle Winkfield's new investment recommendation. Further, Kyle Winkfield earned a large commission in the move.

3

Plaintiffs believe the Ripoff Report post came as an act of retaliation by Defendants against Plaintiffs because of OWRS's decision not to renew its contract with M&O. *See, e.g., id.* ¶¶ 4-5. Plaintiffs contend that the Ripoff Report contains defamatory statements intended to tank Winkfield's reputation and the business prospects of Finley Alexander. *See id.* ¶ 57. As a result, Plaintiffs claim to have lost dozens of current clients and prospective clients who have cited the Ripoff Report post as their reason for not doing business with Finley Alexander. *Id.* ¶¶ 64-68.

Defendants' response is that the Ripoff Report post is true and therefore not defamatory. *See* ECF No. 204 at 7. M&O and Brown say that, while Petersmarck may have made the post, he did so without their knowledge or acquiescence, and they therefore deny any vicarious liability Plaintiffs might seek to establish on their part if the post is, indeed, found to be defamatory. *See id.* at 8-9. Petersmarck says that the Ripoff Report post reflects the truth of what occurred during Winkfield's 2018 transaction with his client and, to the extent that the post may be inaccurate, it only represents his opinion of what happened, and therefore cannot give rise to liability for defamation.

***Procedural History.*** On May 3, 2019, Plaintiffs filed an eight-count Complaint against Defendants in this Court. ECF No. 1. Following a Motion to Dismiss, an Amended Complaint, Defendants' respective Answers and M&O's Counterclaim for tortious interference with contract, on February 21, 2023, Plaintiffs, with leave of the Court, filed a Second Amended Complaint. *See* ECF No. 119.

---

After a lengthy fight with Kyle Winkfield and his office[,] a threat to involve FINRA and the State Insurance Commissioner had to be made to get the original $559,000 returned. The $559,000 was returned [to the client] without the "bonus" money Kyle Winkfield promised and the [client's] loss from the Ohio investment was not made whole. Kyle Winkfield can change the name of his company but he can't change the way he does business – BEWARE!

ECF No. 1-9 at 4.

4

In April 2023, M&O and Brown filed a Motion for Summary Judgment. *See* ECF No. 133. Petersmarck filed a Special Motion to Dismiss under Maryland's Anti-SLAPP statute and his own Motion for Summary Judgment. *See* ECF Nos. 138, 139. Plaintiffs responded with a Motion for Partial Summary Judgment as to Petersmarck's liability and M&O's Counterclaim. *See* ECF No. 132.

On July 11, 2023, following oral argument, the Court ruled from the bench on the parties' dispositive Motions, setting forth its rationale. *See* ECF No. 172. An Order memorializing the Court's rulings followed. ECF No. 173. There is no need to recount the rationale here. Suffice it to say that, as a result of the Court's rulings, only the following claims remain:

Of Plaintiffs' Second Amended Complaint:

- Count I: Tortious Interference with Prospective Business Relations (all Plaintiffs against all Defendants);
- Count II: Defamation Per Se (Plaintiff Finley Alexander only against all Defendants);
- Count III: Defamation (Plaintiff Finley Alexander only against all Defendants); and
- Count IV: Invasion of Privacy False Light (Plaintiff Finley Alexander only against all Defendants).

*Id.* Of Defendants' Counterclaim: None.

The Court set a one-week jury trial for April 22 to April 26, 2024. ECF No. 176.

Soon thereafter, the parties filed the present Motions in Limine. At the Pretrial Conference held on March 26, 2024,[2] the Court orally advised the parties how it intended to rule on these Motions. This Memorandum Opinion formalizes the Court's rulings.

---

[2] During the Pretrial Conference, the Court rescheduled the trial date based on its belief that three weeks, rather than the one week that the parties requested, would be required to try the case from jury selection to verdict. *See* ECF No. 213.

5

## II. Legal Standard

District courts may grant motions in limine pursuant to their inherent authority to manage trials. *See United States v. Verges*, No. 1:13cr222 (JCC), 2014 U.S. Dist. LEXIS 17969, at *5 (E.D. Va. Feb. 12, 2014) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). "The purpose of a motion in limine is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider." *Id.* Whether to grant a motion in limine falls within the district court's discretion. *See id.*

## III. Petersmarck's Motion in Limine to Forbid Any Use of or Reference to His Prior Criminal Record

Petersmarck states that, more than ten years ago, he was convicted of driving while under the influence of alcohol, an offense for which he was incarcerated for less than a year. *See* ECF No. 194-1 at 6. He was also convicted of the manufacture of marijuana and being a felon in possession of a firearm, crimes for which he served time, but as to which he was released from incarceration more than ten years ago. Petersmarck claims that these latter two convictions were expunged in 2022. *See id.*; *id.* at 3 & n.1. Petersmarck now asks this Court to preclude Plaintiffs from making any reference to or otherwise using his criminal record at the trial of this case, pursuant to Federal Rules of Evidence 609, 402, and 403. *See id.* Plaintiffs respond that they should be permitted to delve into Petersmarck's "felonious criminal history" because what Petersmarck has done is to have engaged in a "character assassination" of Winkfield. ECF No. 206 at 2. As a result, say Plaintiffs, Petersmarck has put his own veracity at issue, and his criminal past is relevant to his capacity to testify truthfully on the stand. *See, e.g., id.* at 2-3.

Under Rule 609(b), a court must preclude the admission of evidence of a witness's criminal record if more than ten years have passed since the witness was either convicted or

6

released from incarceration, unless the probative value of the criminal record "substantially outweighs" its prejudicial effect and the proponent gives the adverse party reasonable written notice of the proponent's intent to use this evidence. Fed. R. Evid. 609(b).

More than ten years have passed since Petersmarck's release for each of his three convictions and what will be the "first day of trial" in this case, which is now scheduled for October 28, 2024. *United States v. Brown*, 606 F. Supp. 2d 306, 313 (E.D.N.Y. 2009). Thus Plaintiffs carry the burden of providing "specific facts and circumstances" to show why the probative value of Petersmarck's criminal record substantially outweighs its risk of unfair prejudice. Fed. R. Civ. P. 609(b). The Court believes they have failed to do so. None of Petersmarck's convictions concern a "dishonest act or false statement," Fed. R. Evid. 609(a)(2), nor are any inherently indicative of Petersmarck's ability (or inability) to testify truthfully. Petersmarck therefore may not be impeached at trial by making reference to or introducing his criminal record.

Accordingly, the Court **GRANTS** Petersmarck's Motion in Limine to Forbid Any Use of or Reference to His Prior Criminal Record (ECF No. 194).

### IV. Defendants' Motion in Limine to Exclude the Opinions and Testimony of David Witherspoon

Defendants ask the Court to preclude Plaintiffs' proposed damages expert David Witherspoon from testifying about prejudgment interest and two topics that Witherspoon has referred to as Plaintiffs' "mitigation costs," and Plaintiffs' "lost profits" purportedly incurred in consequence of Petersmarck's allegedly defamatory comment. Defendants argue that, as to both categories of damages, Witherspoon's testimony fails to meet the expert witness requirements of Federal Rule of Evidence 702. *See* ECF No. 184 at 13-30.

The Court reviews the challenges seriatim.

7

As for prejudgment interest, that relief is not available in this case. Under Maryland law, no prejudgment interest may be awarded where, as here, a plaintiff suffers a tort whose damages are not "susceptible to precise measurement" because in such cases, the "award is presumed to be comprehensive." *Buxton v. Buxton*, 363 Md. 634, 656 (2001); *see Baltimore Cnty. v. Accom Servs., Inc.*, 200 Md. App. 380, 425 (2011). Any harm to Plaintiffs from the allegedly defamatory post would unquestionably not be "susceptible to precise measurement." *Id.* In short, no testimony as to prejudgment interest will be allowed in this case.

The Court next considers the other aspects of Defendants' challenges to Witherspoon's proposed expert testimony.

An expert witness may testify when a court is satisfied that the expert possesses "scientific, technical, or other specialized knowledge" that "will help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702(a). The expert's testimony must also be "based on sufficient facts and data," which is the "product of reliable principles and methods," and those principles and methods must have been applied in a "reliable" manner to the facts of the case. Fed. R. Evid. 702(b)-(d).

The Court agrees that Witherspoon should be precluded from testifying about what he calls "mitigation costs," which include "legal fees" (including those fees incurred in pursuit of this litigation), "online reputation costs," and "childcare costs." Under the American rule, attorneys' fees are not recoverable unless authorized by contract or statute. *See Nat'l Cas. Co. v.*

*Lockheed Martin Corp.*, 799 F. Supp. 2d 537, 542 (D. Md. 2011); *MR Crescent City, LLC v. Draper*, 588 F.3d 822, 825 (4th Cir. 2009). Neither exists in this case.[3]

Whatever "online reputation costs" is intended to mean, it is surely redundant and comprehended by any damages Plaintiffs may demonstrate in connection with the existing defamation counts.

"Childcare costs" are an unheard-of component of virtually any tort damage, and are in no way cognizable in this case. Witherspoon will not be permitted to testify about "mitigation costs" at trial.

As to "lost profits," Witherspoon may clearly testify about this component. Although Defendants take issue with Witherspoon's methodology for arriving at his lost-profits figures, *see* ECF No. 184 at 18-30, insofar as his testimony makes sense at all, it would presumably aid the jury in understanding the difficult question of what financial harm, if any, has befallen Plaintiffs as a result of any defamation, as opposed to what profits Plaintiffs might have realized had the Ripoff Report post not been published. *See* Fed. R. Evid. 702; *Belk v. Meyer Corp.*, 679 F.3d 146, 163 (4th Cir. 2012) (upholding admission of expert testimony despite opposing party's argument that it contained "technical deficiencies" that made it less accurate). To the extent that Defendants believe that Witherspoon's methods are faulty and his opinions shaky, they may pursue these arguments through cross examination of Witherspoon or through the testimony of their own rebuttal witness.

---

[3] Attorneys' fees, however, may be relevant to a jury's assessment of punitive damages. But the determination of whether punitive damages will be permitted will only be made "as trial progresses and evidence of liability or lack thereof has been entered into the record." ECF No. 213 at 2.

In sum, Defendants' Motion in Limine to Exclude the Opinions and Testimony of David Witherspoon is **GRANTED IN PART** (as to prejudgment interest and "mitigation costs") and **DENIED IN PART** (as to lost profits).

## V. Plaintiffs' Motion in Limine to Exclude Defense Expert Joel Lesch, and Mr. Winkfield's Private Text Messages

Plaintiffs ask that the testimony of Defendants' rebuttal damages expert, Joel Lesch, be excluded on the grounds that the methods he used to arrive at his competing lost-profits figures are unreliable because Lesch's testimony is predicated on the faulty assumption that Finley Alexander lost business by reason of hosting fewer than usual client-acquisition seminars, not from the fallout of the Ripoff Report post. *See* ECF No. 196-1 at 2-3.

But, as with Defendants' Motion to exclude Witherspoon's testimony about lost profits, Defendants will not be prohibited from introducing Lesch's testimony, and it may be challenged by Plaintiffs if and when Lesch is called. That said, Lesch, it may be noted, is a rebuttal witness. "When offering rebuttal expert testimony, the expert has no burden to produce models or methods of their own; they need only attack those of the [opposing party's] experts." *Earthkind v. Lebermuth Co.*, No. 5:19-CV-00051-KDB-DCK, 2021 U.S. Dist. LEXIS 103080, at *10 (W.D.N.C. June 1, 2021); *see also In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 29 (S.D.N.Y. 2020) (similar). Thus, challenging Witherspoon's explanation for Plaintiffs' drop in revenue following the Ripoff Report post by noting that Witherspoon failed to account for the reduced number of Finley Alexander seminars held, to diminish Witherspoon's projection of Plaintiffs' lost profits, would be well within the proper bounds of rebuttal expert testimony. *See id.* At this juncture, Plaintiffs have provided no reason for the Court to question either Lesch's qualifications or the sufficiency of the data upon which he has relied, which appears to be much

like the data used by Witherspoon. *See id.* Accordingly, Lesch will be permitted to testify as a rebuttal expert at trial.

Plaintiffs next argue that Defendants should be prohibited from introducing private text messages that Winkfield purportedly sent to one of his friends and colleagues, Aimee Spencer-Tiemann. *See* ECF No. 196-1 at 5. Specifically, Plaintiffs seek to exclude more than 300 pages of such messages on the grounds that some of the messages contain profane and salacious material which, they say, would unduly prejudice their case if admitted. *See id.*

When a party requests that evidence be excluded from trial, the party is obliged to identify the evidence to be excluded with particularity. *See Burnett v. BJ'S Wholesale Club*, No. JKB-22-02840, 2024 U.S. Dist. LEXIS 41435, at *28 (D. Md. Mar. 8, 2024). Plaintiffs have not done so. Their request is patently overbroad and vague; they have not even identified which messages, if any, Defendants may wish to introduce at trial. If and when Defendants do seek to introduce some or all of these messages, Plaintiffs will always be able to object to their admissibility on any of the traditional grounds—competency, relevance, and materiality. At this stage, however, it would be inappropriate for the Court to issue a blanket order. In any event, the messages will have to be authenticated and their relevance demonstrated, something Spencer-Tiemann, a named fact witness, presumably can do.

The Court will therefore **DENY** Plaintiffs' Motion in Limine to Exclude Defense Expert Joel Lesch, and Mr. Winkfield's Private Text Messages.

## V.  Conclusion

For the foregoing reasons, the Court **ORDERS** that:

1. Petersmarck's Motion in Limine to Forbid Any Use of or Reference to His Prior Criminal Record (ECF No. 194) is **GRANTED**;

2. Defendants' Motion in Limine to Exclude the Opinions and Testimony of Plaintiffs' Expert David Witherspoon (ECF Nos. 183, 184, 187) is **GRANTED IN PART AND DENIED IN PART** as follows;

    a. With respect to precluding Witherspoon from testifying about "mitigation costs" and prejudgment interest, the Motion is **GRANTED**; and

    b. With respect to precluding Witherspoon from testifying about lost profits, the Motion is **DENIED**; and

3. Plaintiffs' Motion in Limine to Exclude Defense Expert Joel Lesch, and Mr. Winkfield's Private Text Messages (ECF No. 196) is **DENIED**.

A separate Order will **ISSUE**.

April 16, 2024

PETER J. MESSITTE
U.S. District Judge